UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NEWELL RUBBERMAID INC.,           :
et al.,
                                  :
        Plaintiffs,
                                  :        CIVIL ACTION NO.
v.
                                  :        1:12-CV-3262-MHS
FLEXFLO USA, INC.,
                                  :
        Defendant.

## ORDER

This action is before the Court on plaintiffs' motion for summary judgment [64] and plaintiffs' motion to exclude evidence, strike pleadings, and award attorney's fees [78]. The Court's rulings are set out below.

Background

This is a suit on an account for goods sold and delivered. Defendant does not dispute the amount owing but contends that it is entitled to a setoff for profits it lost because of plaintiffs' wrongful termination of their contract. The following facts, unless otherwise noted, are not in dispute.

Effective January 1, 2007, plaintiff Graco Children's Products, Inc. ("Graco"), a subsidiary of plaintiff Newell Rubbermaid Inc. ("Newell"), entered

into a one-year Distribution Agreement (the "Agreement") with defendant FlexFlo USA, Inc. ("FlexFlo"). Under the Agreement, Graco granted FlexFlo the non-exclusive right to purchase Graco products and resell them to customers in Venezuela. After expiration of the initial one-year term, Graco and FlexFlo continuously renewed the Agreement through their conduct and course of business dealings. Pls.' Statement of Undisputed Material Facts [64-2] ¶¶ 1-3, 9-10 & Ex. A [64-4]; Def.'s Resp. to Pls.' Statement of Undisputed Material Facts [79-16] ¶¶ 1-3, 9-10. As a result, the Agreement was in effect for the one-year period commencing on January 1, 2011. Def.'s Am. Countercl. [18] ¶ 8; Pls.' Answer & Defenses to Def.'s Am. Countercl. [38] ¶ 8.

Between July 27 and September 16, 2011, FlexFlo submitted four purchase orders to Graco. On August 22 and September 27, 2011, Graco shipped products to FlexFlo in fulfillment of these purchase orders. FlexFlo received the products but has failed to pay the outstanding account balance of $356,464.91, which FlexFlo admits is due and owing. Pls.' Statement of Undisputed Material Facts [64-2] ¶¶ 22-41 & Exs. X, Y, Z & Z-1 [64-27, 28, 29, 30]; Def.'s Resp. to Pls.' Statement of Undisputed Material Facts [79-16] ¶¶ 22-41.

2

On September 15, 2011, Newell Senior Credit Specialist, Sue Pfeiffer, spoke with Valentina Pulido at FlexFlo and informed her that FlexFlo had exceeded its credit limit and would have to pay down its account before any new orders could be placed. Pls.' Statement of Undisputed Material Facts [64-2] ¶ 20 & Ex. G (Aff. of Sue Pfeiffer) [64-10] ¶ 6 & Ex. 1; Def.'s Resp. to Pls.' Statement of Undisputed Material Facts [79-16] ¶ 20. On September 22, 2011, Ms. Pfeiffer sent an email message to FlexFlo's CEO, Miguel Tawid, again stating that FlexFlo's account needed to be paid down before any new orders could be placed. Pfeiffer Aff. [64-10] ¶ 7; Pls.' Statement of Undisputed Material Facts, Ex. S [64-22]. Consequently, unless FlexFlo paid down its account, any new order placed after September 2011 would not have been approved. Aff. of Gary Popp [64-9] ¶ 13.

On or about October 6, 2011, Mr. Tawid met with Graco's Vice-President, David Goldblatt, and Caterina DiMaggio, an international sales executive at Newell. The parties dispute what was said at the meeting. According to Mr. Goldblatt, he informed Mr. Tawid "that Graco had made a business decision to discontinue the parties' distribution relationship, effective the end of the current contract term, which was set to expire on December 31, 2011." Pls.' Statement of Undisputed Material Facts, Ex. D

AO 72A
(Rev.8/82)

(Aff. of David Goldblatt) [64-7] ¶ 9. Likewise, Ms. DiMaggio states that "Mr. Goldblatt explained to Mr. Tawid that Graco [had] decided not to continue the distribution relationship." Id., Ex. E (Aff. of Caterina DiMaggio) [64-8] ¶ 8. Mr. Goldblatt denies that there was any discussion of whether FlexFlo could make purchases prior to the effective termination date. Goldblatt Aff. [64-7] ¶ 12. Specifically, Mr. Goldblatt states: "During the October 6 Meeting, Mr. Tawid never asked me whether FlexFlo would be allowed to purchase product before the effective termination date of December 31, 2011. I did not tell Mr. Tawid that FlexFlo would be prohibited from purchasing product from Graco prior to the effective termination date." Id.

Mr. Tawid, on the other hand, claims that Mr. Goldblatt told him Graco and Newell had decided to terminate the Agreement "effective immediately." Aff. of Miguel Tawid dated April 23, 2013 [79-1] ¶ 5. According to Mr. Tawid, he then asked whether, if FlexFlo placed orders, Newell and Graco would ship them out, and Mr. Goldblatt responded that they would not. Id. ¶ 6.

On October 10, 2011, Mr. Tawid sent the following email to Mr. Goldblatt with the subject line "meeting minute":

> David, according to our last meeting you said that Graco will not want to continue the distribution [relation]ship in Venezuela because of the following points:

4

1.  Graco wants to simplify the strategic vision in Venezuela with "maybe" one distributor.
2.  Graco wants a solid company dedicated to the distribution.
3.  Graco wants a clear position on the territory with the distributor.

Please confirm the points.

Aff. of Miguel Tawid dated July 22, 2013 [79-3] ¶ 7 & Ex. B.

Mr. Goldblatt did not respond to Mr. Tawid's email. However, on October 17, 2011, Newell Vice President of Legal Affairs, Sean Beckstrom, sent the following letter to Mr. Tawid via both email and regular mail:

RE:   Ceasing Sales

Dear Mr. Tawid:

In following up your meeting last week with David Goldblatt, effective December 31, 2011, Graco Children's Products Inc. ("Graco") will no longer accept orders from Flex Flo USA, Inc. ("Flex Flo") for Graco products intended for resale in the Latin American markets. Graco will permit Flex Flo to sell out its then existing inventory of Graco products, if any.

If you have any questions about the foregoing, please give me a call.

Pls.' Statement of Undisputed Material Facts [64-2] ¶¶ 42-44 & Ex. N [64-17];

Def.'s Resp. to Pls.' Statement of Undisputed Material Facts [79-16] ¶¶ 42-44.

5

After receiving Mr. Beckstrom's letter, Mr. Tawid called Rebecca Quiggle, an employee in Newell's collections department, and told her that "his distributorship was being revoked." Dep. of Rebecca Quiggle [78-2] at 83. At Ms. Quiggle's request, Mr. Tawid sent her a copy of Mr. Beckstrom's October 17 letter. Id. at 83-84. According to Ms. Quiggle, during a subsequent telephone conversation, Mr. Tawid told her "that he was very upset about the ceasing of sales, and that he did not have intentions of paying his bill until . . . the issue had been cleared." Id. at 87-88. Following up on this telephone conversation, Ms. Quiggle asked Mr. Tawid to send her "an e-mail just briefly stating your position and that while you have every intention of paying your bill you are waiting to hear back from Newell Rubbermaid about continuing to work with Graco." Id. at 88.

On December 2, 2011, Mr. Tawid sent Ms. Quiggle the following email:

Dear Beckey, as you know we are having issues with the distribution in Venezuela and since my last meeting with David Goodblatt [sic] I haven't heard anything but the letter that the legal department send to us mentioning the cease of sales in Venezuela. For us is important to understand the reasons, if there is any and because is important to continue with our long relation with your company.

Also you noted that we defer the payments from our side until we end this situation and we are back to normal, but still, it seems that is not important for Graco organization and beside that I

6

> believe that it goes direct into my credibility for them because so far at this point I'm the bad guy.
>
> Our position in this matter is to continue the relationship but on a good business manners.  Please reply to me ASAP to continue and get back to our relations paying and buying again but with a detail business evaluation from both sides to reach the "win-win" situation that every legal company wishes.

Pl.'s Statement of Undisputed Material Facts, Ex. V [64-25]. Ms. Quiggle did not respond to the email.  Quiggle Dep. [78-2] at 91.

Mr. Tawid claims that he "was told by Becky Quiggle not to make any payments towards the amounts due for the Invoices, until such time as the differences between FlexFlo and Newell were resolved as to the continuation of the distribution relationship," and that he decided to "defer" paying the outstanding invoices "[b]ased on the instructions from Becky Quiggle."  Aff. of Miguel Tawid dated July 18, 2013 [79-2] ¶¶ 9-10.  Ms. Quiggle, on the other hand, testified that the only discussion she had with Mr. Tawid "regarding deferring the payments" was the telephone conversation prior to Mr. Tawid's December 2 email, "[w]here he told me he was not going to make the payments until the issue had been [cleared]."  Quiggle Dep. [78-2] at 90.

In March 2012, Newell attempted to negotiate a payment agreement with FlexFlo, offering to accept a reduced amount in three installments, but

7

FlexFlo rejected the offer.   Pls.' Statement of Undisputed Material Facts, Ex. W [64-26].   On August 9, 2012, counsel for Newell and Graco sent Mr. Tawid a letter demanding payment of the outstanding and overdue account balance of $356,464.91. Id., Ex. O [64-18].   The letter stated that if FlexFlo failed to pay the full amount owed or reach an agreement to do so by September 10, 2012, a lawsuit would be filed to collect the outstanding obligation, plus interest and attorney's fees.  Id.

After FlexFlo failed to respond, plaintiffs filed this action on September 18, 2012, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and seeking recovery of attorney's fees and other expenses of litigation under O.C.G.A. § 13-6-11.  Compl. [1], Counts I, III, & V.   Plaintiffs asserted alternative claims for quantum meruit/breach of implied-in-fact contract and unjust enrichment/breach of quasi-contract. Id., Counts II & IV.

In response, FlexFlo asserted counterclaims for breach of contract and breach of the covenant of good faith and fair dealing based on plaintiffs' allegedly wrongful termination of the Distribution Agreement at the October 6 meeting.  Def.'s Am. Countercl. [18], Counts I & II.  FlexFlo seeks to recover

8

lost profits, as well as its attorney's fees and other expenses of litigation under O.C.G.A. § 13-6-11. Id.

On June 28, 2013, plaintiffs moved for summary judgment on Counts I, III, and V of their complaint and on FlexFlo's counterclaims. On September 26, 2013, plaintiffs moved to exclude certain documentary evidence and related deposition testimony from the recently taken deposition of Rebecca Quiggle, to strike one of FlexFlo's affirmative defenses, and for an award of attorney's fees incurred in bringing the motion. For the following reasons, the Court denies plaintiffs' motion to exclude evidence, strike pleadings, and award attorney's fees and grants in part and denies in part plaintiffs' motion for summary judgment.

Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court held that this burden could be met if the movant demonstrates that there is "an absence of evidence to support the non-moving party's case." Id. at 325. At that point, the burden shifts to the non-moving party to go beyond the

pleadings and present specific evidence giving rise to a triable issue. Id. at 324.

In reviewing a motion for summary judgment, the Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).

Discussion

I.   Motion to Exclude Evidence, Strike Pleadings and Award Attorney's Fees

Pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, plaintiffs move to exclude from evidence documents produced for the first time by FlexFlo at the deposition of Rebecca Quiggle, taken on September 4, 2013, as well as the portions of Ms. Quiggle's deposition regarding those documents. Plaintiffs also move to strike FlexFlo's defenses based on these documents, specifically, FlexFlo's Fourth Affirmative Defense, which alleges

10

that plaintiffs agreed to defer collection of the unpaid invoices while the parties attempted to negotiate a good faith resolution of their differences. Finally, plaintiffs seek an award of attorney's fees incurred in bringing their motion.

The documents at issue consist of email messages between Ms. Quiggle and FlexFlo's CEO, Miguel Tawid, sent between March 2 and October 11, 2012, and telephone records reflecting telephone calls from Mr. Tawid to Ms. Quiggle between March 2, 2012, and January 11, 2013. Plaintiffs contend that FlexFlo should have produced these documents in its initial disclosures and in response to plaintiffs' requests for production of documents (1) exchanged between the parties since 2007 relating to the Distribution Agreement and (2) supporting FlexFlo's Fourth Affirmative Defense.

In response, FlexFlo argues that it was not required to produce the documents because they will be used solely for impeachment, they have no probative value to support any of its claims or defenses, and they were not clearly called for by plaintiffs' document requests. Alternatively, FlexFlo argues that even if it should have produced the documents, sanctions are not warranted because its failure to do so was either substantially justified or harmless.

AO 72A
(Rev.8/82)

Rule 37(c) provides in pertinent part as follows: "If a party fails to provide information . . . as required by Rule 26(a) [requiring initial disclosures] or (e) [requiring supplementation of initial disclosures and discovery responses], the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In this case, even assuming that FlexFlo should have produced the email messages and telephone records at issue, and that its failure to do so was not substantially justified, the Court finds that the failure is harmless and that sanctions are therefore not warranted.

The Court agrees with FlexFlo that the email messages and telephone records have no probative value with regard to any of its claims or defenses. Specifically, none of these documents supports FlexFlo's contention that Ms. Quiggle instructed Mr. Tawid not to pay the outstanding invoices until the parties had resolved their differences regarding continuation of the distribution relationship.

As FlexFlo correctly points out, the emails "relate to topics such as arranging telephone calls, exchanging telephone numbers, identifying various individuals, identifying a website, and a recommendation to the Defendant

12

to contact the local State Attorney," but contain nothing relating to Ms. Quiggle's purported instruction not to pay the invoices. Def.'s Mem. of Law in Opp'n to Pls.' Mot. to Exclude Evidence, Strike Pleadings and Award Attorney's Fees [83] at 5. Likewise, FlexFlo correctly notes that the telephone records "show[] only that telephone connections were made between Mr. Tawid and Ms. Quiggle, and the dates and durations of those telephone connections," but indicate nothing about the content of any telephone conversations that took place. Id.

In short, as FlexFlo itself acknowledges, these documents provide no support whatsoever for FlexFlo's claims that Ms. Quiggle instructed Mr. Tawid not to pay the invoices and, consequently, that FlexFlo was not acting in bad faith and being stubbornly litigious when it failed to pay the invoices.[1] Since these documents admittedly have no probative value, their late production by FlexFlo is completely harmless and therefore does not warrant the imposition of sanctions. Therefore, the Court denies plaintiffs' motion.

---

[1] Ms. Quiggle does not dispute that the emails were sent and received or that Mr. Tawid made the telephone calls. Therefore, the documents also have no impeachment value.

II.    Motion for Summary Judgment

    A.    Plaintiffs' Claim for Breach of Contract

Plaintiffs contend that they are entitled to summary judgment on this claim because the evidence establishes that FlexFlo breached the Distribution Agreement by failing to pay the outstanding account balance of $356,464.91. FlexFlo does not dispute that it has not paid the amount claimed by plaintiffs, which it admits is due and owing. Nevertheless, FlexFlo contends that plaintiffs are not entitled to summary judgment on this claim because (1) plaintiffs committed the first breach of the Distribution Agreement by wrongfully terminating it, thereby entitling FlexFlo to a setoff for lost profits it suffered as a result of the breach; and (2) plaintiffs agreed to defer formal collection proceedings pending good faith efforts to negotiate a resolution of the payments due, but plaintiffs failed to negotiate in good faith before filing suit.[2]    Finally, FlexFlo argues that Newell is not entitled to summary

---

[2] FlexFlo also argues that its delay in payment would not constitute a breach "if" the delay were due to conditions beyond its control, citing changes in Venezuelan law that limited its ability to move funds from Venezuela to the United States. Def.'s Am. Br. in Opp'n to Pls.' Mot. for Summ. J. [79] at 25. However, FlexFlo offers no evidence that its failure to pay the outstanding account balance was actually due to these Venezuelan legal restrictions. In fact, the only evidence in this regard is a letter from Mr. Tawid stating that, because of the Venezuelan law, FlexFlo needed a "maximum of 180 days" to pay any invoices from Graco. Pls.'
(continued...)

judgment on this claim because it is not a party to the Distribution Agreement. The Court concludes that Graco, but not Newell, is entitled to summary judgment on this claim.

> 1. **Plaintiffs' Alleged Wrongful Termination of the Distribution Agreement**

First, FlexFlo's argument that plaintiffs wrongfully terminated the Distribution Agreement, entitling it to a setoff, is not supported by the evidence. By its terms, the Distribution Agreement expired on December 31, 2011. FlexFlo's CEO, Mr. Tawid, contends that Graco's Vice-President, Mr. Goldblatt, wrongfully terminated the Agreement, "effective immediately," at their meeting on October 6, 2011. This contention, however, is not only contradicted by Mr. Goldblatt but also by Mr. Beckstrom's letter of October 17, 2011, which unambiguously informed Mr. Tawid that Graco was ceasing sales to FlexFlo "effective December 31, 2011." Mr. Tawid's own email of October 10, 2011, is consistent with this understanding. In the email, Mr.

---

[2](...continued)
Statement of Undisputed Material Facts, Ex. M [64-16]. At the time this lawsuit was filed, on September 18, 2012, significantly more than 180 days had elapsed since Graco issued the four unpaid invoices. Id., Exs. X, Y, Z & Z-1 [64-27, 28, 29, 30]. Thus, there is no evidence that FlexFlo's failure to pay the invoices is due to conditions beyond its control.

15

Tawid refers to the ending of the distribution relationship in the future tense and says nothing about Graco ceasing sales to FlexFlo immediately.

Even accepting Mr. Tawid's contention about what Mr. Goldblatt said at the October 6 meeting, Mr. Beckstrom's letter clearly put Mr. Tawid on notice that Graco did not intend to cease sales to FlexFlo until December 31, 2011, when the Distribution Agreement expired. If Mr. Tawid was confused or had any questions about this, he could have sought clarification from Graco. Mr. Beckstrom's letter expressly asked Mr. Tawid to call if he had any questions, but Mr. Tawid did not do so. In fact, there is no evidence that, after he received Mr. Beckstrom's letter, Mr. Tawid ever asked anyone at Graco or Newell whether orders submitted by FlexFlo prior to December 31, 2011, would be accepted.[3]

In light of this evidence, the Court finds that Mr. Tawid's testimony regarding the October 6 meeting is insufficient to create a genuine issue of fact regarding plaintiffs' alleged early termination of the Distribution Agreement. Instead, the Court finds that the evidence establishes as a

---

[3] Even before the October 6 meeting, Newell had informed Mr. Tawid that FlexFlo could not place any more orders until it paid down its account. Thus, regardless of the status of the Distribution Agreement, Mr. Tawid knew that future orders would not be accepted if FlexFlo failed to pay down its account.

matter of law that plaintiffs did not terminate the Distribution Agreement but merely informed FlexFlo that the Agreement would not be renewed after it expired on December 31, 2011. Graco had an absolute right not to renew the Agreement, with or without notifying FlexFlo.[4] Thus, the evidence is insufficient to support a finding that plaintiffs breached the Distribution Agreement or, consequently, that FlexFlo is entitled to any setoff.[5]

2.   Plaintiffs' Alleged Agreement to Defer
     Collection Proceedings

Second, FlexFlo's argument that plaintiffs agreed to defer collection proceedings pending completion of good faith settlement negotiations is also not supported by the evidence. Mr. Tawid claims that he did not pay the outstanding invoices because Rebecca Quiggle, an employee in Newell's collections department, told him not to do so. Ms. Quiggle, on the other hand, testified that Mr. Tawid informed her that he was not going to pay the

---

[4] The parties dispute whether Mr. Beckstrom's letter satisfied the Distribution Agreement's requirement that notices either be delivered by hand or sent by registered mail. But these arguments miss the point. The Distribution Agreement did not require any notice of a decision not to renew. Therefore, Mr. Beckstrom's letter was not required to satisfy the notice requirement.

[5] Plaintiffs argue that FlexFlo should have brought a claim for recoupment rather than setoff. See O.C.G.A. § 13-7-3 (distinguishing setoff and recoupment). Regardless, the claim must fail because the evidence does not support a finding of a breach.

17

invoices until the parties' differences were resolved.  Even accepting Mr. Tawid's account, there is no evidence that Ms. Quiggle had any authority, either actual or apparent, to defer FlexFlo's payment obligations under the Distribution Agreement.  The Agreement provided that payment terms were as set forth on the invoices, which required payment within 60 days.  Any modification of these terms could only be made "by mutual agreement of the parties confirmed by a written instrument setting forth such modifications and executed by both parties."  Distribution Agreement [64-4] § 15.  Thus, Mr. Tawid could not have reasonably believed that Ms. Quiggle's alleged oral instructions were effective to relieve FlexFlo of its obligation to pay the outstanding invoices.

Furthermore, even if plaintiffs had told FlexFlo they would defer collection proceedings pending completion of good faith negotiations, there is no evidence that plaintiffs failed to negotiate in good faith before filing this action.  The evidence shows that in March 2012 plaintiffs offered to accept payment from FlexFlo of a reduced amount to be paid in three installments, but that FlexFlo rejected this offer, apparently because it wanted a deal that included resumption of the parties' distribution relationship.  Plaintiffs, however, were under no obligation to resume their distribution relationship

with FlexFlo, regardless of their reasons, and their refusal to negotiate such a deal did not constitute bad faith.  By the time FlexFlo received plaintiffs' demand letter in August of 2012, Mr. Tawid clearly knew that any alleged deferral of FlexFlo's payment obligations was at an end, and that if he failed to pay the amount he admitted that FlexFlo owed, or reach an agreement to do so, plaintiffs intended to file suit.  Therefore, the evidence simply does not support FlexFlo's claim that summary judgment is inappropriate because plaintiffs agreed to defer collection proceedings.

### 3.    Newell's Right to Recover

Finally, with regard to Newell's claim for breach of contract, the Court agrees with FlexFlo that Newell is not a proper party plaintiff.  Plaintiffs argue that Newell may sue on the contract because it is Graco's ultimate parent and the entity responsible for collecting payments on behalf of Graco.  However, Newell's status as Graco's parent does not give it the right to sue on a contract to which only Graco and FlexFlo were parties.  See O.C.G.A. § 9-2-20 ("As a general rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested"); Worsham v. Provident Cos., Inc., 249 F. Supp. 2d 1325, 1341 (N.D. Ga. 2002)

19

(action against parent corporation could not survive "because neither it nor its predecessor was a party to the contract").

Plaintiffs point out that the "Newell Rubbermaid" name and logo appear at the top of each of the unpaid invoices, "thereby notifying Defendant that Newell Rubbermaid was collecting payment on behalf of Graco." Br. in Support of Mot. for Summ. J. [64-1] at 11. However, the invoices also clearly state that FlexFlo is to pay Graco, not Newell. The fact that Newell acted as Graco's agent in collecting payments from FlexFlo does not give Newell the right to sue in its own name to collect amounts owing to Graco. See O.C.G.A. § 10-6-82 ("Generally, an agent shall have no right of action on contracts made for his principal."); Curry v. Roberson, 75 S.E.2d 282, 283 (Ga. Ct. App. 1953) ("Where the plaintiff is the agent of a known principal, and his agency is not coupled with an interest known to the opposite party in such manner as to form an exception to the general rule, the agent may not in his own name bring an action for the recovery of his principal's money.").

B.    Plaintiffs' Claim for Breach of Covenant of Good Faith and Fair Dealing

In addition to their breach of contract claim, plaintiffs assert a separate claim for breach of the implied covenant of good faith and fair dealing. Like

20

the breach of contract claim, this claim is based on FlexFlo's failure to pay the outstanding account balance of $356,464.91 and seeks to recover that amount plus interest and costs.

"Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement," which "modifies and becomes a part of the provisions of the contract." Chung v. JP Morgan Chase Bank, N.A., No. 1:11-CV-2131-TWT, 2013 WL 5354211, at *5 (N.D. Ga. Sept. 24, 2013) (quotation omitted). However, "the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." Id. (quotation omitted). Since breach of the implied covenant of good faith and fair dealing does not provide an independent basis for liability, this claim merges into the breach of contract claim. Id. at *6.

C.    Plaintiffs' Claim for Attorney's Fees

In addition to compensatory damages, plaintiffs seek an award of attorney's fees and other expenses of litigation under O.C.G.A. § 13-6-11. That Code section provides:

> The expenses of litigation generally shall not be allowed as a part of damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted

21

> in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. 13-6-11. Plaintiffs contend that FlexFlo has acted in bad faith and been stubbornly litigious by deliberately refusing to pay the account balance that it admits is due and owing until the parties agree to renew their distribution relationship, despite the fact that plaintiffs have no obligation to renew that relationship and there is no bona fide controversy as to FlexFlo's liability on the outstanding invoices.

In response, FlexFlo argues that it has not acted in bad faith or been stubbornly litigious because it deferred paying the outstanding invoices on the advice of Newell's employee, Ms. Quiggle, and because a bona fide controversy exists as to the whether FlexFlo is entitled to a setoff against the amount it owes because plaintiffs breached the Distribution Agreement first by terminating it without proper notice. Finally, FlexFlo argues that a decision whether to award attorney's fees and other litigation expenses under this Code section is reserved for the jury and cannot be decided on summary judgment.

The Court has already rejected FlexFlo's arguments that its failure to pay the outstanding invoices is justified because plaintiffs breached the

22

Distribution Agreement first and because plaintiffs agreed to defer collection proceedings. Nevertheless, the Court is not authorized to find that plaintiffs are entitled to an award of attorney's fees and other expenses of litigation based on FlexFlo's bad faith and stubborn litigiousness. Under Georgia law, "both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, [and] a trial court is not authorized to grant summary judgment in favor of a claimant therefor." Covington Square Assocs., LLC v. Ingles Markets, Inc., 696 S.E.2d 649, 651 (Ga. 2010) (citations omitted). Therefore, the Court denies plaintiffs' motion for summary judgment on this claim.

D.     Defendant's Counterclaim

FlexFlo asserts counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Both claims are based on the allegation that plaintiffs wrongfully terminated the Distribution Agreement. As discussed above in connection with plaintiffs' motion for summary judgment on their breach of contract claim, the evidence does not support a finding that plaintiffs wrongfully terminated the Distribution Agreement. Therefore, the Court grants plaintiffs' motion for summary judgment on FlexFlo's counterclaims.

AO 72A
(Rev.8/82)

Summary

For the foregoing reasons, the Court DENIES plaintiffs' motion to exclude evidence, strike pleadings and award attorney's fees [78] and GRANTS IN PART AND DENIES IN PART plaintiffs' motion for summary judgment [64].[6]

IT IS SO ORDERED, this ⸺ day of January, 2014.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

---

[6] The Court's ruling renders moot plaintiffs' alternative claims asserted in Counts II and IV of the complaint. Therefore, the only claim remaining for trial is Graco's claim for an award of attorney's fees and other litigation expenses under O.C.G.A. § 13-6-11. Absent a motion by plaintiffs showing that there is no just reason for delay, final judgment will not be entered until this claim has either been tried or dismissed. See Fed. R. Civ. P. 54(b).